Court. I'm Dominic Spinelli, and I represent the appellants and plaintiffs below in this case, Richard Jones and his wife, Jill Jones. Taking a cue from one of the judges in the prior argument, I'm not going to try not to repeat a lot of what is in our briefs. At the trial court level, the USA put this case in the Prevet arena, and the trial court followed, and I was unsuccessful to convince the trial court otherwise. I hope I am successful here to convince this court otherwise. The Prevet and Tolan line of cases, in my humble opinion, do not apply to this factual circumstance. Every one of those cases applies to the injury of an employee of a subcontractor who is working on the job at the time of the injury. Our case here is an employee of the concessionaire of the hotel that is hired to run the hotel, not to do construction. DNC is not a general contractor or a construction contractor. And this injury occurs to Mr. Jones approximately a year after the construction is completed. He is not working on the construction. He has nothing to do with the construction. He's a porter in the hotel who is sent to find the maintenance man whose office is behind the boiler room. He walks in. There's concrete that goes to a door, and beyond it is concrete in a boiler. There's one light bulb. He walks in and goes down a drop that I'm calling a step, but it's a 12-inch drop, severely injures his arm. He was not working on a job site. He was not a construction worker. And I think a couple of examples will illustrate my point rather than so much talking about the cases. Although in that process, I'd like you to do it immediately, or I could do it after I do these examples. Your examples, if you wish. Okay. Thank you, Your Honor. If this project, which was Project 3090, this concrete pour was in progress, and the employee of the concrete subcontractor was pouring this slab that went up to the doorway with this drop, and he fell off and injured himself. If he brought this action, PREVET would apply. He could not sue DNC. He could not sue the USA. How would you articulate the principle of law involved? Principle of law regarding? In the application of PREVET to that situation. In the application of PREVET to that situation, the employee who was injured, if that employee pursued a cause of action for liability against the owner and or general contractor or the concessionaire, that would be a vicarious theory of liability, i.e., the peculiar risk doctrine, which PREVET essentially did away with and went back to the basis of non-liability for hiring an independent contractor. So that example, that employee's cause of action, the concrete subcontractor employee, would be one of vicarious liability. Well, what is your theory of liability? Your Honor, my theory of liability is pretty straightforward. Under California law, the USA is the owner of the premises. They have an obligation, a duty, to have a safe premises. There's no question that they own the premises, and they own the hotel, they own the whole national park. Well, PREVET has nothing to do with that. Correct. My theory of liability is basic premises liability law in California, which applies to the federal government. They owned it. There was a dangerous condition. They had knowledge of it because their engineer post-construction saw it, accepted it, approved it, and did nothing about a 12-inch drop, which brings me to my second example, and then I'll go right to the Kingsman, because this second example takes me, I think, to Kingsman. If you have a commercial office building and you have many tenants in the building, one of the tenants is the owner's property manager, who's in charge of running that building, managing the property, taking care of it, taking care of the tenants. There's a renovation in the common area of the building, and stairs are renovated, as well as other things. In renovating the stairs, the run of the stair, not the height, but the run, is one inch shorter than it should be. It should be eight inches at seven inches, let's say. And they did not put any anti-slip strips on the edge of the step. The owner accepts the construction, the remodel. A year later, an employee of that property management company had gone upstairs to deal with a tenant, walks down the stairs, slips and falls, injures herself. If we follow the USA's position and what the trial court did in Kingsman, in this case, then that employee could not sue the owner of that building, of that commercial building. That is not the law in California. Once the owner accepts the construction, they are the ones responsible for that premises. That employee of the property management company could not sue the contractor under the California Completed and Accepted Contract. She could not sue her property management company because she was in the course and scope of her employment and has workers' compensation. The only person left is the premises owner. And the premises owner's liability is not extinguished in this example under the Prevet cases, and specifically it is not under Kingsman. Kingsman is an injury, the inhalation of asbestos, during the project of someone who was working on the asbestos during the construction. And that's why it doesn't apply here. I think that example, at least in my opinion, indicates why it should not apply to this case and why the Prevet line of cases do not apply. So Mr. Jones is not working on the construction at the time of injury. He's a porter. The construction is completed a year before. Delaware North was not a construction contractor. They just operated the hotel. So if you take those facts, none of those facts fit within the many cases that followed the Supreme Court opinion in Prevet. And they don't fit within Kingsman either. Because in Kingsman, you have the liability of the property owner who, at the time, is alleged to have failed to warn during the construction. Not a year later. Here, the United States, after accepting the premises and approving the poor without plans, without specifications, and after it's done, it now accepts responsibility to the premises for anybody that may come on those premises after that point. Let me ask you this then. Why doesn't DNC have the duty to maintain safe conditions on the premises since it runs the hotel and manages the hotel? Your Honor, I'm not disputing that they may have responsibility, that the employer may have certain responsibilities in that regard. But so does the owner. The owner can delegate its responsibility and protect itself through indemnity or insurance, but that does not absolve the owner of liability under California premises liability law after construction is completed. And it is really a matter of percentages of fault. Are you going to assess so much to the employer and so much to the United States of America? That's the issue down the road. But I've got to convince this Court to get out of Privet to get to that issue. I'm not saying the employer doesn't have responsibilities. They do. But they don't overtake and immune the United States of America. Well, let me make sure I understand. Ultimately, the District Court did analyze this under Kingsman only and under the exercise of retained control only. If Kingsman and the Privet cases do not apply, which I'm saying they do not, it would be an expansion of California law to do so. If they do not apply, the trial court did not then analyze this under just a straight premises liability case under California law, Civil Code 1714 and the jury instructions that I cited in the briefs, the Cassie instructions. The trial court went simply to Kingsman and which is in the last of the line almost of the Supreme Court cases and the appellate cases in California on Privet. Speaking of the jury instructions you cited in your brief, you know, they don't seem to apply this case because they talk about, you know, the liability of public premises, right? Premises owned by public entities and under the FDCA, the U.S. is liable as if a private party were involved. Correct, Your Honor. So those instructions don't seem to apply. Well, they would apply to a public entity in the state of California. Right, which is not a private person. Civil Code Section 1714 applies to a private person and the Roland v. Christian California Supreme Court case regarding the duty analysis on premises liability. That's what applies to the United States. Can I ask you just to address the negligent, because I'm curious to see what you think with respect to the negligent exercise of retained control in this situation. Did the National Park Service really have authority if all it did was approve something from happening? I mean, does approval meet authority? Well, I think the best way for me to do that, Your Honor, this is the deposition transcript, page 92 of the exhibits of Marty Nielsen. So under either contract, if the government had made a decision to reduce the height of this step by adding another step, it had the power to do that, correct? It had the power to make the changes to the structure, yes. Then Mr. Rust on page 98 says, this is 98, not of his deposition, but 98 of the transcript. I don't particularly approve work. I just want to make sure I answer the question in a way that is, you know, yes to one and no to the other. What do you mean you don't particularly approve work? I offer recommendations for approval. And the approval is made by or given by whom? Superintendent of the park. So you pass your recommendations or comments up the chain for the superintendent to decide whether or not to make the approval? Basically, yes. And then Mr. Rust describes the condition of this on page 105, that it was a dirt floor. Then you had to step over the concrete footing. And when you poured the concrete, it just went right to the edge of the step and you could not see that it was actually a drop. And then he says, page 110, were you ever provided plans or specifications with regard to the concrete slab that was poured? No. Did you ever ask for a plan? No. Why not? Doesn't that cut against the argument about retained control? This is the paragraph 18 of your second, I think, amended complaint. It sounds more like acquiescence rather than affirmative exercise of retained control. Well, the process that the United States has in place is to have DNC provide plans and specifications that are then approved. And Mr. Rust says, I don't actually approve them. I recommend them for approval. What happened here is DNC went forward and poured this slab. And after the fact, without any plans or specifications, asked for approval. Mr. Rust, without plans and without making any recommendation, went contrary to the contract and approved the construction. The retained control is the retained control to accept and approve all construction at this facility at the Wawona Hotel. And he exercised that by approving it after it's done and not requiring any mechanism to make it safe because it's a 12-inch drop. And one of the mechanisms that's in the contract is to have plans approved or drawn by architects and engineers. He decided that wasn't necessary and approved it. That is the exercise of retained control. And it's actually cited in Kingsman at page, I think it's 670, where the Supreme Court talks about their decision in Hooker and how omissions such as this result in liability. This is an omission in the exercise of retained control. Would DNC have had the authority to put up a warning sign without going through Mr. Rust? I'm going to answer that I assume they could have. That was not part of the record below. Thank you. And I did not save any extra time, I don't think. Thank you. I would just like to ask, I realize you're over time. Was there anything in the concession contract whereby the United States delegated all responsibility to DNC? In other words, if all responsibility had been delegated to them, do you realize that or do you agree that premises liability would not apply? But I couldn't see anything in the concession contract where they delegated everything to DNC. I would agree. They did not delegate everything. All right. Thank you. They retained the ability to approve. I have a copy of the contract and I couldn't find it. Thank you. Thank you. Good morning. Excuse my voice. I have lost it over the weekend. I apologize. I'll try to speak up as best I can. My name is Ryan Lipke. I'm here for the United States. As counsel was talking about, we're talking about a step in the Wawona Hotel, a historic building. It was allegedly a 12-inch step, allegedly dangerous. We're talking about the allegations here. We're not quibbling or disputing facts as to the dangerousness of the condition. Our position has been that that is a condition that is certainly something within the ability of DNC, the contractor here, the independent contractor, better said, the concessioner, to guard their employees. If they're aware of this, and there's no dispute that they were aware of this condition, that they could have protected their employees from the risk of harm by any reasonable safety measure. And that is the language of Kinsman, which I think is the case that applies. Well, excuse me, counsel. Even though they could have, were there required? I mean, why isn't this a straightforward premises liability case? Because you have an independent contractor involved. And when you have an independent contractor involved, the analysis is under Kinsman. I think the California Supreme Court decision in Kinsman is very broad. It was very careful with it. The Supreme Court was very careful with its language to say, in the situation where you have an employee of an independent contractor, we are going to look at this under whether or not there's a concealed condition. If there's not a concealed condition, were there reasonable safety precautions that could have been taken to protect the employee? Now, here you do have, undisputedly, a very broad delegation to Delaware North. They are supposed to run this hotel. But where in the contract, I couldn't find it, is all responsibility delegated to DNC? The question of all delegation, that's a difficult question for me to say. They are very specific terms of what has been delegated to DNC from the United States. And that is the running of that hotel. It was there in complete charge of the maintenance, the management, and this was all decided by the district court in the first motion to dismiss we did under 12B1, where the district court had replete facts. It had the entire contract before it, the terms of the contract. All of these things were before the district court. I set forth DNC's obligation to make sure that they are compliant with all workplace conditions, such as might be required by OSHA or CalOSHA. That is specifically in the contract. Now, I do have my separate statement behind me, and I can cite it to you if you'd like. But I can assure you, and I made pains to make sure that was part of the record. Excuse me, counsel, I'm running out of time again. How do you distinguish the case of Autry v. United States? I don't know if I would distinguish. I think that case is actually quite favorable to us in the sense that it shows that the United States, as a landowner, can delegate some of its responsibilities as a landowner. It can, but did it, is my question. It did, absolutely. And, you know, I think that... And where in the contract do we find that? Your Honor, if you want me to quote the terms, I need to refer to the briefs. But the reason I want to caution here is, again, that first motion to dismiss was not discussed in Apollon's brief. They were talking about, their brief was specific about the court's ruling on the second amended complaint, a motion to dismiss under 12b-6. The court looked at those allegations and determined, and that was after the court granted our motion to dismiss for lack of jurisdiction and said, well, I'm going to give you this limited ability to kind of state your position under this California law. They were given the first opportunity to do so. They had been plaintiffs. Plaintiffs submitted their first amended complaint. The court ruled on it and said, look, the applicable law here is Kinsman, and I want some allegations regarding Kinsman showing liability under Kinsman. When they filed their second amended complaint, we again filed a motion to dismiss and said, look, these allegations don't show any of the facts that would show liability under Hooker, under a retained control theory, or under Kinsman, which is a premises liability theory. And I think the district court was very careful. And when we're talking about the allegations, there were no allegations showing that under Kinsman, that there was a concealed condition for which the contractor, the concessioner, who has been given specific duties to inspect and maintain this thing, which, again, was part of the trial court's decision, the district court's decision in its first motion to dismiss, and this passage of time which appellant's counsel is focused upon, I think, I admit this is a condition that the employer should have and could have and indeed did know about. So what could they have done? They're in charge of the premises. The United States does not run the Wawona as a hotel. They looked at DNC to do that. DNC interfaces with the public. And this is something that comes straight from Congress. They say, National Park Service, we want you to retain a contractor where you can, a concessioner, to run this like a business. They're the ones who interface with the public. They're the ones who run it. Mr. Jones was a porter. Excuse me, counsel, if I may interrupt. Sure. Why shouldn't the United States be liable since their agent, Mr. Rusk, approved, inspected this step and approved? Well, I think that that is, you know, if we're talking about a retained control theory under Hooker, I think there's two things we need to focus on. The first is, under Hooker, and all the cases following Hooker, when we're talking about a retained control, it is an injury that happens during the work. And if you look at the entire history of independent contractor law in the United States, or not in the United States, but in California, rather, we're talking about liability that's not caused by the condition produced, but by, or the end product, but the conditions during the work. So if we're talking about the conditions during the work of the cement, plaintiff has already said, look, I'm not talking about somebody injured during the slab pour. I'm talking about something that occurred a year later. Because Porter had nothing to do with the construction. Absolutely none. I mean, Jones, excuse me, worked as a porter, had nothing to do with the construction, whereas in Hooker and Tyverberg, correct me if I'm wrong, the worker was part of the construction. Indeed, and that was, in both those cases, that was a work in progress. And I think that's a very, very important point, and a point that I think the district court keyed on in its decision. And it's something I really kind of, in preparing for this argument, it really struck me that that's why Hooker doesn't even apply in the first instance. Because we're not talking about, you know, somebody on the job site. The job site here for Mr. Jones is the Wawona Hotel. And I think to say that that is not something that's part of the equation. His job site is the Wawona Hotel. His employer controls the Wawona Hotel. So, then I think Kinsman applies. But he was not injured by some direction of Mr. Rust or any NPS employee. They were not in charge of the safety of the employees on the Wawona. All the porters, all the cooks, all the service people. The United States cannot have somebody on premises making sure that DNC does its job in protecting its employees from any of the dangerous conditions that occur in running a hotel, especially one in Yosemite, where you have natural conditions. You have a historic, that is something, it even gets beyond what, you know, the involvement of the United States. Anybody who would hire, any lander who would hire somebody to run their hotel can be expected to look to the safety of their employees. Now, if there's a dangerous condition, either because somebody did something negligent, third party, if there's a natural condition, if there's anything on that premises that can create an unreasonable risk of harm to their employees, they need to take action. And if here, they could have said, you can't go that way. You can't go through the boiler room unless you are a maintenance person. You need to, we're going to lock that door. We're going to put a sign up. And indeed, there are facts on the record that after this accident, DNC did put a sign up. I take some umbrage. But did they need to seek the permission? Absolutely not. Okay. And ask you for, you know, in terms of telling their porters, don't go seek your maintenance person through the boiler room. Go around to the other side. Or use a walkie-talkie. That is something that they are in control of. Okay. I know your voice. I'm sorry. But if you could take a moment here. Let me ask you, so I just want to figure out whether or not there's any way to interpret Mr. Rust or the National Park Service as directing what occurred here by having to give approval. Because what happened here, the DNC said we're going to pour concrete. Is that okay for us to pour concrete? Correct. Correct? All right. So that giving of that approval, that doesn't mean the DNC, I'm sorry, the Park Service retained control? I do not. You know, when we get into these questions of retained control, I think the California Supreme Court is first very specific to say just because the owner or general contractor has power, has authority, that does not open the window for liability. And I think if that were the only salient fact, every single owner and every single independent or general contractor could be liable because they almost always have authority or power. And in Hooker, indeed, Caltrans had replete authority and replete directions to look out after the safety of the premises and to make sure everybody was safe. They had oversight concerning safety with the rigors and all the rest of it. There's even evidence before you. I'm sorry. I just wanted an answer to the question. This was an acquiescence is what I'm saying. And do you have any authority analogy, another case that sets forth? I think Hooker is a good example of that where the Supreme Court talks about it directly. Caltrans had, indeed, replete authority to direct the persons operating the crane to make sure the rigors were out or all these kinds of things. And, indeed, there is fact showing that they could have done some. So there's a knowledge there of possibly negligent behavior by one of the subs, by the employer. There's permission. There's authority. It was very specific, and that's what I don't find in the concession contract. In terms of the United States authority? They're giving complete authority to DNC, whereas in the Caltrans case it was very specific. Well, I guess I kind of have a different view of the facts. I think in Caltrans or the Hooker case, it was the owner, it was the defendant who had complete authority. They have more authority than I think what the United States here had. It had a right to approve. It had a right to allow. And that is, I don't think that is disputed in the sense that we're certainly not saying that the United States can tell the concessioner that, hey, you need to do something, or you need to follow certain guidelines. We don't dispute that the United States had that authority. And I think accepting that, but whether or not this was done pursuant to the contract, as Mr. Spinelli argues, there's no suggestion that any of that in the district court, I think, was quite keyed on this issue of, well, you're not alleging that somehow DNC was relying upon you to look after the safety. It was their architect, it was their engineer, they being DNC, who was in charge. And the fact that Mr. Russ was aware of this 12-inch step and didn't do anything about it, does that matter? I don't think that matters for the two reasons I've specified. Number one, this is not a retained control situation because the work is done. Mr. Jones was not injured during the course of the installation. And secondly, the mere acquiescence, even knowledge of a dangerous practice or a dangerous condition, is not sufficient under Hooker, and I think that this is quite simply a kinsman case where we're only talking about is this a concealed condition? No. Could DNC have protected their employee? Yes. And, you know, we're getting to the policy of this. The United States and DNC have a complicated arrangement. Delaware North Companies takes the risks. They are in charge of their premises. They've paid workers' comp to this person. They've had this person, you know, so they bear all the risk on this. They understand this. And I think if we kind of enlarge, even under California, or under the Federal Tort Claims Act, the responsibility of the United States to supervise and, you know, have this more greater oversight, you know, that is basically what we're talking about is kind of a negligent oversight theory. I think that that would be unworkable for the United States and, indeed, anybody who hires an independent contractor. Certainly for the United States, who is not in the best position to run a hotel and is in a precarious position, if it has to look after its concession to make sure its employees have a safe place to work. And I think this is something, again, the language of kinsmen, I keep coming back to that reasonable precautions. So long as there are reasonable precautions that can be taken, and, indeed, I think there could be in this case, I think that's sufficient. One more final point here, and I think that just as a point of clarity, I think, you know, if we start getting a field of what was in the pleadings, you know, I think the district court had ample opportunity to look at that. And it was when it said, I'm not going to give leave to amend, it had a very full view of the facts, having already ruled on what was amounting to a motion for summary judgment. So I'd just rest to say that I think that they... He did not abuse his discretion. Thank you. Thank you. I'll give you one minute to respond. Thank you, Your Honor. I'm just going to say really one thing. I find it interesting that the argument, at least at the very end I just heard, is that this is not a case of retained control. Hooker doesn't apply. That's what they argued applied at the trial court level in all of the Prevet cases. So if that doesn't apply, what does? I was confused by the last statement that Hooker did not apply to the issue of retained control. The trial court, at the first motion, which was a motion to dismiss, a motion for summary judgment, did have a record before it, but it did not rule on the motion for summary judgment. It ruled on the motion to dismiss. And the trial court really did not rule, in its various rulings, on the contractual issue that Justice Nelson has been asking questions about. They did not really make any finding as to what was delegated, was everything delegated to DNC. That finding was not made. If Kingsman applies to this situation, this court is expanding California law and protecting every property owner that has a contractor do work on its premises, and after that work is done, there is a dangerous condition and somebody is injured. I beg this court not to do that. That is not the law in the state of California. Thank you for your time. Thank you. Thank you. The case is submitted.
judges: Nelson, Tashima, Murguia